# United States Court of Appeals
## For the First Circuit

No. 18-1139

BEARBONES, INC., d/b/a Morningside Bakery and
AMARAL ENTERPRISES LLC,

Plaintiffs, Appellants,

v.

PEERLESS INDEMNITY INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Katherine A. Robertson, U.S. Magistrate Judge]

Before

Thompson, Selya, and Barron,
Circuit Judges.

Richard W. Gannett, with whom Gannett & Associates was on
brief, for appellants.
William O. Monahan, with whom Edward A. Bopp and Monahan &
Associates, P.C., were on brief, for appellee.

August 21, 2019

**SELYA**, **Circuit Judge**.  This case, which floats to the surface in the water-logged aftermath of a ruptured pipe in a commercial bakery, pits two affiliated insureds against their insurer.  Although the insureds (qua appellants) proffer several assignments of error, we are held at the starting line by an apparent jurisdictional barrier.  Concluding, as we do, that additional factfinding may be enlightening, we remand to the district court (albeit retaining appellate jurisdiction).

Certain facts are undisputed.  Bearbones, Inc. and Amaral Enterprises LLC (collectively, the insureds or the appellants) operated and owned a commercial bakery in Pittsfield, Massachusetts.  At the times material hereto, defendant-appellee Peerless Indemnity Insurance Company had in effect a commercial business insurance policy covering the bakery.  A pipe ruptured on February 19, 2013, causing a number of covered losses.

The parties were unable to settle the ensuing insurance claims.  Consequently, the appellants commenced a civil action against Peerless in the United States District Court for the District of Massachusetts.  The complaint identified Bearbones as a Massachusetts corporation with its principal place of business there; identified Amaral Enterprises as a Massachusetts limited liability company with its sole member residing in New York; and identified Peerless as an Illinois corporation with its principal place of business in that state.  Based on these allegations and

- 2 -

the claimed amount in controversy, the appellants invoked federal diversity jurisdiction. See 28 U.S.C. § 1332.

Peerless did not challenge the propriety of diversity jurisdiction; instead, it simply answered the complaint. In its answer, Peerless admitted that it was an Illinois corporation, but averred that its principal place of business was located in Massachusetts. Peerless filed a corporate disclosure statement that same day, see Fed. R. Civ. P. 7.1, which appeared to confirm that its principal place of business was in Massachusetts.

Curiously, the discrepancy relating to Peerless's principal place of business seems to have gone unnoticed by either the parties or the district court. Thus, the case proceeded in the ordinary course. Along the way, the parties consented to allow a magistrate judge to preside. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Following considerable skirmishing, not relevant here, the magistrate judge granted Peerless's motion for summary judgment, see Fed. R. Civ. P. 56(a), and the appellants filed a notice of appeal.

After the appeal was fully briefed and an argument date was set, we noticed an apparent jurisdictional glitch (described below). Recognizing that "[i]n the absence of jurisdiction, a court is powerless to act," Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP, 362 F.3d 136, 138 (1st Cir. 2004), we directed the parties to show cause why the case should not be sent back to

the district court with instructions to vacate the judgment and dismiss the action without prejudice for want of subject-matter jurisdiction.[1]

As said, the appellants filed this action based on the putative existence of diversity jurisdiction. Diversity jurisdiction requires both an amount in controversy in excess of $75,000 and complete diversity of citizenship between all plaintiffs, on the one hand, and all defendants, on the other hand. See 28 U.S.C. § 1332(a); Barrett v. Lombardi, 239 F.3d 23, 30-31 (1st Cir. 2001); see also Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267 (1806). The allegations of the complaint satisfy the amount in controversy requirement, and we will make no further reference to that component of the jurisdictional calculus. The problem lies with diversity of citizenship.

Diversity of citizenship is measured by the "facts that existed at the time of filing—whether the challenge be brought shortly after filing . . . or even for the first time on appeal."[2]

---

[1] There is no doubt that jurisdictional deficiencies may be raised for the first time on appeal. See Am. Fiber & Finishing, 362 F.2d at 138-39. Moreover, "[f]ederal courts are expected to monitor their jurisdictional boundaries vigilantly and to guard carefully against expansion." Id. at 139.

[2] We note that, notwithstanding the length of litigation or the resources that have been devoted to the matter, "parties cannot confer subject matter jurisdiction on a federal court 'by indolence, oversight, acquiescence, or consent.'" Am. Fiber & Finishing, 362 F.2d at 139 (quoting United States v. Horn, 29 F.3d 754, 768 (1st Cir. 1994)).

Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 570-71 (2004); see ConnectU LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008) (citing Mollan v. Torrance, 22 U.S. (9 Wheat.) 537, 539 (1824)). Special rules guide the citizenship inquiry for corporations. Congress has declared (by a statute enacted in 1958 and amended in 2011) that "a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1) (2011). Although Congress did not give any interpretive guidance as to how to identify a corporation's principal place of business, the Supreme Court has filled this gap, instructing lower courts to use the "nerve center" test. Hertz Corp. v. Friend, 559 U.S. 77, 93 (2010). For purposes of this test, "[a] corporation's 'nerve center' . . . is the particular location from which its 'officers direct, control, and coordinate the corporation's activities.'" Harrison v. Granite Bay Care, Inc., 811 F.3d 36, 40 (1st Cir. 2016) (quoting Hertz, 559 U.S. at 92-93). A corporation's "nerve center" is often the location of its headquarters. Id.

Consistent with the neurological metaphor, "a corporate 'brain' . . . suggests a single location." Hertz, 559 U.S. at 95. Seen in this light, the test demands facts sufficient to "find the one location from which a corporation is ultimately controlled." Harrison, 811 F.3d at 41.

Here, the allegations of the complaint, viewed in isolation, suggest that complete diversity exists between the parties. It alleges, in effect, that the appellants are citizens of Massachusetts and New York,[3] and that Peerless is a citizen of Illinois. But the complaint cannot be viewed in isolation: Peerless denominated Massachusetts as its principal place of business in its answer and in other filings. If those statements are correct, Peerless is a citizen of both Illinois (its state of incorporation) and Massachusetts, see 28 U.S.C. § 1332(c)(1), and there is not (nor has there ever been) complete diversity of citizenship.

It is apodictic that "the burden of proving a corporation's principal place of business . . . rests upon the party asserting existence of diversity jurisdiction." Media Duplication Servs., Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1236 (1st Cir. 1991). At the show-cause hearing, the appellants

---

[3] For purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of its members. See Sterngold Dental, LLC v. HDI Glob. Ins. Co., 929 F.3d 1, 6 n.2 (1st Cir. 2019); Pramco, LLC ex rel. CFSC Consort., LLC v. San Juan Bay Marina, Inc., 435 F.3d 51, 54-55 (1st Cir. 2006). Here, the appellants identified the residency, not the citizenship, of Amaral Enterprises's sole member. We recognize that, "[j]urisdictionally speaking, residency and citizenship are not interchangeable." Valentín v. Hosp. Bella Vista, 254 F.3d 358, 361 n.1 (1st Cir. 2001). But even if the member's state of citizenship differs from his state of residency, the jurisdictional glitch — which turns on the location of Peerless's principal place of business — would remain.

attempted to close the circle through the submission of documents indicating that Peerless has "a business location" in Illinois. These submissions prove too little: they fail to shed any light on where Peerless's principal place of business is located. When pressed, appellants' counsel complained that he did not have enough time to collect the facts necessary to prove the location of Peerless's principal place of business and asked that we remand to permit discovery and further factfinding.

We take this plaint with several grains of salt. After all, jurisdictional facts ought to be gathered and assessed before an action is commenced. Cf. Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (observing that conclusory jurisdictional facts in a complaint will not defeat a motion to dismiss for lack of subject-matter jurisdiction because "the party invoking the jurisdiction of a federal court carries the burden of proving its existence" (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993))). Here, moreover, the appellants should have been alerted to this potential jurisdictional problem by Peerless's assertion in its answer and other filings, more than four years ago, that its principal place of business was in Massachusetts. Even so, we have decided, in our discretion, to grant the appellants' request.

In its present posture, this case turns on whether there was complete diversity of citizenship when the action was

commenced.[4]  The record before us is conflicted, and the parties can point to nothing that definitively locates Peerless's principal place of business at the relevant time.  Mindful that "[a]ppellate and trial courts have different institutional competencies," Ungar v. Palestine Liberation Org., 599 F.3d 79, 87 (1st Cir. 2010), we remand to the district court to find the facts and determine whether there was complete diversity between the parties at the time the action was commenced.

    The district court shall report its findings and conclusions to us, in written form, within ninety days of the date of this opinion.  We retain appellate jurisdiction pending our

---

[4] At the show-cause hearing, counsel for Peerless suggested that federal subject-matter jurisdiction may have attached through the appellants' aborted attempt to supplement their complaint by adding federal constitutional claims.  But the appellants have never asserted federal question jurisdiction, see 28 U.S.C. § 1331, and in any event, the magistrate judge denied the appellants' motion to supplement the complaint.  See Bearbones, Inc. v. Peerless Indem. Ins. Co., No. 15-30017, 2016 WL 5928799, at *10 (D. Mass. Oct. 11, 2016).  Federal subject-matter jurisdiction cannot be premised on claims that were never made part of the case.  See Bell v. Hood, 327 U.S. 678, 681 (1946) (explaining that "the District Court must look to the way the complaint is drawn to see if it . . . claim[s] a right to recover under the Constitution and laws of the United States"); BIW Deceived v. Local S6, Indus. Union of Marine & Shipbldg. Workers of Am., 132 F.3d 824, 831 (1st Cir. 1997) ("The gates of federal question jurisdiction are customarily patrolled by a steely-eyed sentry . . . which, in general, prohibits the exercise of federal question jurisdiction if no federal claim appears within the four corners of the complaint.").

receipt of a report from the court below and our further actions in consequence of that report.

**So ordered.**