KLEIN *v.* BRYER, Adm'x, Etc. et al.

[No. 112, September Term, 1961.]

*Decided January 31, 1962.*

The cause was argued before HAMMOND, PRESCOTT, HORNEY, MARBURY, and SYBERT, JJ.

*Alan A. Sperling,* with whom were *Sperling & Dragon* on the brief, for appellant.

*Howard J. Thomas,* with whom was *Bradshaw Thomas* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

The plaintiff below has appealed from an order entered by the Circuit Court for Montgomery County, sitting as a Court of Equity, in a special case by consent.

The petition requested the trial judge to determine two questions:

(1) Is all, or any portion of the $5,850 now held by defendant Montgomery Title Company for the estate of Leo A. Bryer, held in trust for plaintiff by virtue of a written agreement dated October 1, 1956, between plaintiff and Leo A. Bryer?; (2) If the answer to the preceding question is in the affirmative, is such trust property the sole property of plaintiff, and not subject to claims of third parties against the trustee, Leo A. Bryer, or his legal representative?

The agreement between Bryer and the plaintiff, mentioned in question 1 above, contained the following paragraph:

"5. * * * In no case shall the Broker be personally liable to the Salesman for any commission, nor shall said Salesman be personally liable to said Broker for any commissions, but when the commission shall have been collected from the party or parties for whom the service was performed, said Broker, in the event such commissions are paid to him, shall hold the same in trust for said Salesman and himself to be divided according to the terms of this agreement, * * *."

The parties then stipulated:

"(1) Of the $5,850.00 held for Leo A. Bryer by Montgomery Title Company, $4,950 represents sales commissions on homes sold in 1959 by Grace Wills Klein while acting as a salesman for Leo A. Bryer, pursuant to an employment agreement filed as Exhibit I herein.

"(2) According to the terms of said agreement,

> Grace Wills Klein's commissions on the aforementioned sales amount to 50% of $4,950, or $2,475, and were never received by her."

This was followed by an agreement of the parties that, if questions 1 and 2, above, were answered in the affirmative, the court should enforce the trust and order the Title Company to pay the plaintiff the amount due her, and direct that any funds remaining in the hands of the Title Company be paid to the representative of the estate of Leo A. Bryer; but in the event that the answers were in the negative, the whole sum held by the Title Company should be paid to the estate of Leo A. Bryer.

The trial judge determined that both questions should be answered in the negative, and ordered the Title Company to pay the full amount of $5,850 to the said estate.

This is the entire record as the case is presented to us. The appellant contends it discloses that $2,475 of the $5,850 held by the Title Company for the estate of Leo A. Bryer is impressed by an express trust for her benefit; the appellees, in their brief, content themselves by claiming the record fails to show any question or decision made by the trial judge, and, therefore, it raises no question for our decision.

With this proposition of the appellees, we are unable to agree. Maryland Rule 886 a specifically provides that when an action has been "tried by the lower court without a jury," this Court will review the case upon both the law and the evidence.

Thus, the simple question for our determination is whether any portion of the fund held by the Title Company to the credit of the Leo A. Bryer estate is impressed with a trust for the benefit of the appellant. The decision turns upon a careful analysis of the provisions of the contract quoted above, which will be made below, after a very brief reference to the law.

The facts do not call for a lengthy or elaborate discussion of the law relating to trusts. It will suffice, at this point, to say that they may be created for any purpose, not illegal; and, in a broad sense, they are either express, or the result of the operation of law. Restatement, *Trusts, 2d,* § 2, says a

trust (excluding charitable, resulting and constructive trusts) is a fiduciary relationship with respect to property, subjecting the person by whom the title is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.

We turn now to a consideration of the contract. Of course, every trust must have a trust *res,* and it is obvious that when the contract was executed, there was no trust property in existence and ascertainable; hence our problem is to determine the relationship between the appellant and Bryer (or his agent) when the commissions were collected. The situation here is not the same as that in *Century Indemnity Co. v. State,* 144 F. Supp. 671, wherein Judge Thomsen dealt with a deposit made upon a sale, which was held by a broker. A relationship of debtor and creditor between the broker and his saleswoman did not arise when the settlements for the properties were made. The contract expressly provides that "in no case shall the Broker be personally liable to the Salesman"; and it is difficult to conceive of a more explicit or clearer manifestation of the intention of the parties that Bryer should not have the free and unrestricted use of the money received as commissions resulting from sales made by the appellant, which would have been necessary for the relationship of debtor and creditor to have arisen. *Dunlop Sand & Gravel Corp. v. Hospelhorn,* 172 Md. 279, 288, 191 A. 701; 1 *Scott, Trusts* (2d Ed.), § 14.1; Restatement, *op. cit.,* § 14. It is apparent that if the parties intended such a relationship to arise, the whole of paragraph 5 set forth above is meaningless; for the debtor-creditor relationship would have been created by the provision in the contract to pay the appellant a portion of the commissions, even if paragraph 5 had not been inserted in the contract.

A careful reading of the provisions of paragraph 5 discloses that Bryer did not promise to create in the future a trust in property owned by him. Such a situation is discussed and considered in 1 *Scott, Trusts* (2d Ed.), § 26.5, and in Restatement, *op. cit.,* §§ 26, 30. Nor did he promise to create in the future a trust in a *res* to be then brought forth by him.

On the contrary, he promised to act as trustee of property to be produced in the future by the efforts of the appellant; and his promise to act as such trustee was supported by a valuable consideration, for he was to receive one-half of the commissions. In this situation—with the promise of Bryer to act as trustee contained in a valid and enforceable contract, supported by a valid and valuable consideration, furnished by the appellant-promisee—a trust arose, and we so hold, in one-half of the commissions in favor of the appellant, when the commissions were collected by the Title Company; and the appellant was the settlor of said trust. 1 *Scott, Trusts* (2d Ed.), § 17.3; Restatement, *op. cit.*, § 26 comment *n.* The mere fact that the trust property was not in existence (as a fund) at the time of the execution of the contract did not prevent a trust from later arising. Restatement, *op. cit.*, comments, *a, b* and *c.* Nor did the collection of the commissions by the Title Company, instead of by Bryer personally, prevent the same. When the commissions were actually paid to the company as Bryer's agent, it was, in legal contemplation, a fulfillment of the provision in the contract that reads, "in the event such commissions are paid to him [Bryer]," which provision was followed by a statement that in such an event, the commissions would be held in trust. And, likewise, the further fact that Bryer died did not stop the trust from arising. Restatement, *op. cit.*, § 32 (2) and comment *j.*

Hence, the trial judge's answer to question (1) should have been in the affirmative. And, as we have held that a valid trust was created instead of a debtor-creditor relationship between Bryer (or his estate) and the appellant, the answer to question (2) also should have been in the affirmative, for the rights of the appellant in the trust property are superior to the rights of Bryer's general creditors. Restatement, *op. cit.*, § 74, comment *a.*

> *Order reversed, and case remanded for the entry of a decree not inconsistent with this opinion; the appellee, Bryer, to pay the costs.*